·William E. BROCK, Secretary of Labor, United States Department of Labor, Appellant in No. 86–3118, Cross-Appellee in No. 86–3119,

v.

Homer Alan RICHARDSON, d/b/a Richardson Construction, Appellee in No. 86–3118, Cross-Appellant in No. 86–3119.

Nos. 86–3118, 86–3119.

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1986.

Decided Feb. 18, 1987.

As Amended Feb. 23, 1987.

Marshall Harris, Regional Solicitor, George R. Salem, Deputy Solicitor of Labor, Monica Gallagher, Associate Solicitor, Linda Jan S. Pack, Counsel for Appellate Litigation, Carol Arnold (argued), Attorney, U.S. Dept. of Labor, Washington, D.C., for appellant/cross-appellee.

Henry Miller, III (argued), Pittsburgh, Pa., for appellee/cross-appellant.

Before SLOVITER and STAPLETON, Circuit Judges, and GREEN, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The district court found that Homer Alan Richardson, d/b/a Richardson Construction, discharged his employee George F. Banyas in violation of section 15(a)(3) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3), because he believed Banyas had filed a complaint with the Wage and Hour Division of the United States Department of Labor. Richardson appeals, arguing that the district court erred in failing to find the discharge was for good cause and in holding that a discharge of an employee for mere suspicion of engaging in protected activities is covered by the statute.

The district court ordered the employer to pay Banyas $14,000 in back wages, but did not award either pre-judgment or post-judgment interest. The Secretary of Labor appeals from the denial of the interest awards.

## I.

Richardson, together with his wife Virginia, operates a construction company in Tarentum, Pennsylvania, which employs from three to six skilled and unskilled employees. Banyas was hired by Richardson in 1977 as a laborer. He was discharged on October 6, 1980. According to Richardson, he discharged Banyas for good cause because of his careless work habits, poor performance, and belligerent attitude. Richardson points to evidence that he had previously discharged Banyas on September 6, 1980 because Banyas caused damage to equipment, and rehired him a few days later only after discussions with the union. He points to other instances of alleged inadequate work, particularly the instance

on October 2, 1980 when Banyas and another employee incorrectly cut beams on a construction project. It is undisputed that Banyas and the other employee returned to fix that job.

The Secretary, however, introduced evidence presenting the discharge in a different light. In early September 1980, Donovan Durbin, a compliance officer with the Wage and Hour Division of the Department of Labor, contacted Richardson regarding an investigation of the firm for overtime violations, apparently in response to an employee complaint dated January 2, 1978. This complaint was not filed by Banyas. As part of this investigation, Durbin interviewed Banyas on September 24, 1980. Banyas told Durbin that he had worked overtime hours for which he had not been compensated, and signed a written statement to that effect. On October 3, Durbin met with the Richardsons to review employment records and to discuss possible violations, including Banyas' claims. Banyas' claims were denied by the Richardsons. As noted above, Banyas was fired three days after this meeting. The overtime wage investigation was closed in November 1980, after the Richardsons paid the claims.

▮ Banyas filed a formal complaint of discriminatory discharge with the Wage and Hour Division, which was assigned for investigation to Donald Swanson. In the course of Swanson's investigation, Virginia Richardson told him on the telephone that Banyas had caused trouble for them before with the government. She stated on another occasion that the reason Banyas had been fired was because he was a troublemaker, had caused them problems with the government and the union, and had ruined equipment and not done jobs properly. Shortly thereafter she told John Linkosky, Assistant Area Director of the Wage and Hour Division, Pittsburgh Area Office, that one of the reasons Banyas had been discharged was because she believed he had

* Hon. Clifford Scott Green, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

filed a complaint with the Wage and Hour Division. Also, contemporaneously with Banyas' firing, Richardson told Banyas' father, who also worked for the Richardson firm, that the firing occurred because Banyas had reported Richardson to the government. In fact, Richardson testified that he believed Banyas "had caused the Wage Hour investigation to take place in the first place," App. at 81, and that at the time he let Banyas go, he believed Banyas had lied to Durbin about his overtime.

There was evidence in the record from which the trier of fact could have found for either party on the factual issue of the reason for Banyas' termination. At the conclusion of the testimony, the district court stated:

> I have taken into consideration the testimony I have heard here. Of course, as a finder of fact I have to determine questions of credibility.

> I find as a fact that the defendant discharged Mr. Banyas on October 6, 1980, because he believed that Mr. Banyas had filed a complaint against him with the Wage and Hour Administration.

App. at 17. Although Richardson contests the finding of causation, we conclude that it is not clearly erroneous.[1]

## II.

Richardson next argues that the district court erred as a matter of law in applying section 15(a)(3) of the Fair Labor Standards Act. That section prohibits the discharge of or discrimination in any other manner against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Fair Labor Standards Act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

Richardson argues that in order to prove a violation of section 15(a)(3), the government must show both that the discharged employee engaged in one of the specified overt acts and that the employer was aware of the act. He contends that because Banyas did not in fact file a complaint, and because the court did not find that Banyas engaged in one of the acts specifically protected under the statute,[2] there can be no violation of the statute. According to Richardson, the employer's mere belief that the employee has engaged in protected conduct is not enough.

The parties have directed us to no case, nor have we found one, considering whether an employer's belief that an employee has engaged in protected activity is sufficient to trigger application of section 15(a)(3). Nonetheless, we reject Richardson's argument that the section is inapplicable if the employer's perception turns out to be mistaken. The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted. As the Court stated in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), in describing other provisions of that Act:

> But these provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those

---

1. In light of the district court's finding of the reason for the discharge, the mixed motivation cases are not implicated. Other courts have held that there is a violation of section 15(a)(3) whenever a retaliatory motive is a determinative factor in the decision to discharge the employee. *See Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir.1975); *Goldberg v. Bama Manufacturing Corp.*, 302 F.2d 152, 154–57 (5th Cir.1962). Such a holding is consistent with the standard we apply in other discrimination cases. *See, e.g., Gavalik v. Continental Can Co.*, 812 F.2d 834, 859–60 (3d Cir.1987) (interfer-

ence with protected rights under ERISA); *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 653 (3d Cir.1986) (Age Discrimination in Employment Act).

2. We note that it is uncontradicted that Banyas provided information about Richardson's violation of the overtime provisions of the FLSA to the compliance officer. He was fired shortly after the Richardsons learned of this cooperation. The trial court's decision did not rest on this fact.

who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Id.* at 597, 64 S.Ct. 703.

The anti-retaliation provision was designed to encourage employees to report suspected wage and hour violations by their employers. In *Mitchell v. Robert De-Mario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), the Court explained why a workplace environment conducive to employee reporting is important to the enforcement of the substantive rights created by the Fair Labor Standards Act:

> For weighty practical and other reasons, Congress did not seek to secure compliance with prescribed standards through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. This end the prohibition of § 15(a)(3) against discharges and other discriminatory practices was designed to serve. For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions. Cf. *Holden v. Hardy*, 169 U.S. 366, 397 [18 S.Ct. 383, 390, 42 L.Ed. 780] [(1898)]. By the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced.

*Id.* at 292, 80 S.Ct. at 335. Thus, the Court has made clear that the key to interpreting the anti-retaliation provision is the need to prevent employees' "fear of economic retaliation" for voicing grievances about substandard conditions.

It follows that courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language. For example, it has been applied to protect employees who have protested Fair Labor Standards Act violations to their employers, *see Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984), who have refused to release back pay claims or return back pay awards to their employers, *see Marshall v. Parking Co. of America*, 670 F.2d 141 (10th Cir. 1982) (per curiam); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 180–83 (8th Cir.1975), and who have communicated with investigators from the Wage and Hour Division, *see Daniel v. Winn-Dixie Atlanta, Inc.*, 611 F.Supp. 57 (N.D.Ga. 1985). In each of these instances, the employee's activities were considered necessary to the effective assertion of employees' rights under the Fair Labor Standards Act, and thus entitled to protection.[3]

It is also of some relevance that section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), which makes it an unfair labor practice for an employer to discriminate in order to discourage membership in any labor organization, has been held to apply to protect employees even if they did not in fact engage in protected activity. Although we recognize that there are differences between the statutory language of section 8(a)(3) of the NLRA and section 15(a)(3) of the FLSA, NLRA cases are often considered of assistance in interpreting the Fair Labor Standards Act. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723, 67 S.Ct. 1473, 1473–74, 91 L.Ed. 1772 (1947). Thus, in *N.L.R.B. v. Ritchie Manufacturing Co.*, 354 F.2d 90, 98 (8th Cir.1966), the court held that the employer violated section 8(a)(3) by discharging an employee because of a belief

---

**3.** Language in cases referred to by Richardson where the courts found the employees were discharged solely for reasons unrelated to retaliation is inapposite here. *See Donovan v. Hanna* *Systems, Inc.*, 93 Lab. Cas. (CCH) ¶ 34,176, 44,-498, 44,500 n. 2 (D.Md.1982); *Wirtz v. C.H. Valentine Lumber Co.*, 236 F.Supp. 616, 620 (E.D.S.C.1964).

that the employee was engaged in union activity, despite the absence of proof of actual union activity or membership by the employee in the union. *See also N.L.R.B. v. Link-Belt Co.*, 311 U.S. 584, 589–90, 61 S.Ct. 358, 361–62, 85 L.Ed. 368 (1941); *Henning & Cheadle, Inc. v. N.L.R.B.*, 522 F.2d 1050, 1052 (7th Cir.1975) (per curiam); *N.L.R.B. v. Clinton Packing Co.*, 468 F.2d 953, 954–55 (8th Cir.1972) (per curiam).

It is evident that the discharge of an employee in the mistaken belief that the employee has engaged in protected activity creates the same atmosphere of intimidation as does the discharge of an employee who did in fact complain of FLSA violations. For that reason, we conclude that a finding that an employer retaliated against an employee because the employer believed the employee complained or engaged in other activity specified in section 15(a)(3) is sufficient to bring the employer's conduct within that section. We therefore affirm the district court's holding on liability.

### III.

The district court awarded Banyas $14,-000 in back wages after rejecting the Secretary's computation of $19,154 and Richardson's computation of $5,917. Counsel for the Secretary then asked that the figure also include interest. The district court replied, "No, no, no. Don't gild the lily." App. at 19. The Secretary appeals from the district court's failure to grant pre-judgment and post-judgment interest. We will consider each separately.

### A. *Post-Judgment Interest*

The federal post-judgment interest statute provides in relevant part that, "Interest shall be allowed on any money *judgment* in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (emphasis added). In *Perkins v. Fourniquet*, 55 U.S. (14 How.) 328, 330, 14 L.Ed. 441 (1853), the Supreme Court held that the predecessor statute to section 1961,[4] did not apply to equitable decrees, relying on the use of the word "judgment", as distinguished from "decree", the equitable counterpart. Chief

Justice Taney explained that, "[the statute] is confined, in plain terms, to judgments at law." *Id.*

Suit in this case was brought pursuant to section 17 of the Fair Labor Standards Act, 29 U.S.C. § 217. Richardson argues that because relief under that section is equitable in nature, even when the award is that of back pay, *see Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. at 292, 80 S.Ct. at 335, the mandatory imposition of post-judgment interest under section 1961 does not apply.

In the more than 130 years since the decision in *Perkins v. Fourniquet*, there has been substantial erosion of the distinction between law and equity. Following the lead of many states, Rule 2 of the Federal Rules of Civil Procedure abolished the technical and procedural distinctions between law and equity. *See* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1041 at 137–142, 137 n. 1 (1969). The Ninth Circuit has recently stated that, with the modern merger of law and equity, the distinction is inappropriate for purposes of section 1961, and held that section 1961 mandates awarding post-judgment interest on a backpay award under the FLSA. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir.1986). The Second Circuit also referred to "the questionable assumption" that section 1961 does not apply to a back pay award, but rather than construing the statute as controlling, it held that an equity court has power to grant interest on back pay awards under the Fair Labor Standards Act by analogy to section 1961. *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 58 (2d Cir.1984).

■ We can see no valid distinction for purposes of post-judgment interest between an award of back pay arising from a breach of contract suit and an award of back pay as a result of a violation of the Fair Labor Standards Act. In each instance, such interest "eliminates an economic incentive ... for a losing defendant to appeal a judgment." S.Rep. No. 275, 97th Cong., 2d Sess. 11, *reprinted in* 1982

---

**4.** Act of Aug. 23, 1842, ch. 188, § 8, 5 stat. 516, 518.

U.S.Code Cong. & Admin. News 11, 21. However, since Congress is presumed to have adopted a judicial interpretation of a statute when it re-enacts it without change, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–82, 382 n. 66, 102 S.Ct. 1825, 1839–41, 1841 n. 66, 72 L.Ed.2d 182 (1982), we are hesitant to interpret section 1961 as mandating post-judgment interest in FLSA back pay awards. Nonetheless, because the reasoning that animates section 1961 is equally applicable to a restitutionary judgment awarding back pay, we hold that FLSA back pay awards should be presumed to carry post-judgment interest, unless the equities in a particular case require otherwise.

### B. *Pre-Judgment Interest*

In oral argument before this court, the Secretary urged us to rule that pre-judgment interest is mandatory in FLSA back pay awards, a marked change from his briefed position that both pre- and post-judgment interest are discretionary. We must consider whether there is any reason to distinguish between pre-judgment interest and post-judgment interest for this purpose. Although a Senate Report considering amendments to section 1961 recognized that pre-judgment interest "may be essential in order to compensate the plaintiff or to avoid unjust enrichment of the defendant," S.Rep. No. 275, 97th Cong.,2d Sess. 11, *reprinted in* 1982 U.S.Code Cong. & Admin.News 11, 21, Congress did not make awards of such interest mandatory.

Nonetheless, many of the appellate courts to consider the issue have held that pre-judgment interest for back pay awards under the FLSA is mandatory, *see Usery v. Associated Drugs, Inc.,* 538 F.2d 1191, 1194 (5th Cir.1976); *McClanahan v. Mathews,* 440 F.2d 320, 326 (6th Cir.1971), or should be presumed to be appropriate. *See Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986); *Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 57–58 (2d Cir.1984); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 183 (8th Cir.1975); *cf. Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 663 (4th Cir.1969) (district court's denial of pre-judgment interest was not an abuse of discretion). *But see Clougherty v. James Vernor Co.,* 187 F.2d 288, 293–94 (6th Cir.), *cert. denied,* 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616 (1951) (denying pre-judgment interest).

This court has not directly addressed the issue. In *Ambromovage v. United Mine Workers of America,* 726 F.2d 972 (3d Cir. 1984), we stated that "[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's discretion." *Id.* at 981–82 (footnote omitted). Pre-judgment interest is to be "given in response to considerations of fairness [and] denied when its exaction would be inequitable." *Id.* at 982 (*quoting Board of Commissioners of Jackson County, Kansas v. United States,* 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939)).

*Ambromovage* concerned a claim by retired mineworkers against their union for breach of its fiduciary duty by failing to collect royalties for the benefit of the union's health and welfare fund. The district court had denied pre-judgment interest because the union had loaned over 13 million dollars to the fund, without interest, to prevent harm to the fund. This court affirmed the denial of pre-judgment interest, holding that the district court did not abuse its discretion and was not compelled to award pre-judgment interest as a matter of law. Of course, there were substantial equities in support of the denial of pre-judgment interest. Moreover, *Ambromovage* was not a back pay case, and does not govern the issue whether back pay is sufficiently distinctive to justify a different holding.

In our only reported case considering an award of pre-judgment interest on a back pay award under the Fair Labor Standards Act, we affirmed the district court's award. *Hodgson v. Wheaton Glass Co.,* 446 F.2d 527 (3d Cir.1971). We rejected the employer's challenge that such interest was unauthorized, stating, "there is no reason why the order of the equity court should not include compensation, by way of interest, for the money wrongfully withheld." *Id.*

at 535. In so ruling, we looked to "'an appraisal of the congressional purpose in imposing [the statutory obligations] and [the] general principles deemed relevant by the Court.'" *Id.* at 534 (*quoting Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947)).

The Second Circuit reached its conclusion that "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award under the FLSA" after expressly considering a number of factors. *Donovan v. Sovereign Security Ltd.*, 726 F.2d at 58. The court noted that such interest "obviously serves the compensatory purpose by making up for the delay in receiving the money." *Id.* Of course, that reason would be equally applicable to all judgments for money, and, therefore, does not explain why back pay awards merit different treatment. However, Chief Judge Feinberg, who authored the opinion, also noted that such interest is "especially appropriate for wage earners, who ordinarily do not have access to resources other than their wages to meet the necessities of daily living." *Id.* Another reason given was that pre-judgment interest serves "to remedy the competitive disadvantage inflicted on law-abiding businesses." *Id.* This reason is directly related to the congressional purposes underlying the FLSA, which sought to impose comparable requirements on similarly situated businesses. *See* H.R.Rep. No. 2182, 75th Cong., 3d Sess. 6–7 (1938). Payment of pre-judgment interest on back pay awards by those who do not live up to their FLSA obligations will reduce the incentive to cut wages as a competitive ploy.

In addition to the persuasive reasons set forth in *Sovereign Security, Ltd.*, we also find informative the reasons given by the NLRB in ruling that interest would henceforth be imposed on back pay awards, notwithstanding Congress' failure to so provide in the NLRA. *See Isis Plumbing & Heating Co.*, 138 NLRB 716 (1962), *set aside on other grounds, N.L.R.B. v. Isis Plumbing & Heating Co.*, 322 F.2d 913

(9th Cir.1963). The Board reiterated that back pay "'is an indebtedness arising out of an obligation imposed by statute—an incident fixed by law to the employer-employee relationship,'" *id.* at 719 (quoting *Nathanson v. N.L.R.B.*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952)). This court affirmed a back pay order with such interest in *North Cambria Fuel Co. v. N.L.R.B.*, 645 F.2d 177, 181 (3d Cir.), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 110 (1981).

■ Based on the considerations expressed above, we will apply the same presumption in favor of pre-judgment interest on a back pay award under the FLSA as we have just held applicable to post-judgment interest. The district court must explain why the usual equities in favor of such interest are not applicable in a case in which such interest is denied.[5]

## IV.

We conclude that the district court did not err in holding that Richardson violated section 15(a)(3) of the Fair Labor Standards Act by discharging Banyas because he believed that Banyas had filed a complaint against him with the Wage and Hour Division. We also conclude that a back pay award under the Fair Labor Standards Act should be presumed to carry both post-judgment interest and pre-judgment interest unless the equities in a particular case require otherwise.

Because our holding is based on equitable principles, the rate of interest is not governed by any applicable statute. If the district court awards post-judgment interest and pre-judgment interest, it must apply its discretion to determine the appropriate rate, which is not necessarily the same for each. In any event, the court must explain the basis for its rulings.

For the reasons set forth above, we will affirm the district court's order except that we will vacate that portion of the order that awards back pay in the amount of

---

**5.** The court's exercise of its discretion requires more of an explanation than the mere statement "Let's not gild the lily." We cannot exercise our

review function without a statement of reasons. *See United States v. Criden*, 648 F.2d 814, 819 (3d Cir.1981).

$14,000 and will remand to the district court so that it can make a determination with respect to the award of post-judgment interest and pre-judgment interest before re-entering that portion of its order.