OPINION OF THE COURT
FISHER, Circuit Judge.
Shirley Edwards filed suit against her employer, A.H. Cornell and Son, Inc. (“A.H. Cornell”), and supervisors, Scott A. Cornell and Melissa J. Closterman, claiming that she was terminated in violation of Section 510 of the Employee Retirement Income Security Act of 1974 (“ERISA”) and state common law after complaining to management about alleged ERISA violations. The defendants filed a Rule 12(b)(6) motion to dismiss, and the District Court granted the motion, holding that Edwards’s complaints were not part of an “inquiry or proceeding” and thus not protected under Section 510. On appeal, we are presented with a single issue of first impression for this Court: whether the anti-retaliation provision of Section 510 of ERISA, 29 U.S.C. § 1140, protects an employee’s unsolicited internal complaints to management. Four federal Courts of Appeals have ruled on this issue: the Fifth and Ninth Circuits have held in the affirmative, and the Second and Fourth Circuits have held in the negative. We agree with the latter, and. hold that unsolicited internal complaints are not protected.
I.
A.[1]
Defendant A.H. Cornell is a family-owned company that provides commercial and residential construction services. In March 2006, A.H. Cornell hired Plaintiff Edwards to serve as its Director of Human Resources and to establish a human resources department. Defendant Cornell, an A.H. Cornell executive, oversaw the terms and conditions of Edwards’s employment, and Defendant Closterman, who managed the company’s daily operations, acted as Edwards’s supervisor. Edwards was employed by A.H. Cornell for a total of nearly three years. As an employee, Edwards participated in the company’s group health insurance plan, which was governed by ERISA.
*219 Edwards claims that she discovered, during the last weeks of her employment, that A.H. Cornell was engaged in several ERISA violations: the company was allegedly administering the group health plan on a discriminatory basis, misrepresenting to some employees the cost of group health coverage in an effort to dissuade employees from opting into benefits, and enrolling non-citizens in its ERISA plans by providing false social security numbers and other fraudulent information to insurance carriers. Edwards alleges that she “objected to and/or complained to” A.H. Cornell’s management about these ERISA violations and was terminated on or around February 11, 2009, as a result. (App. at 26, ¶ 33.) According to Edwards, Closterman was directly responsible for her termination, and Cornell participated.
B.
On March 18, 2009, Edwards filed a complaint in the United States District Court for the Eastern District of Pennsylvania against A.H. Cornell, Cornell, and Closterman, asserting an anti-retaliation claim under Section 510 of ERISA and common law wrongful discharge. On May 18, 2009, the defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Edwards had not engaged in a protected activity under Section 510.
The District Court granted the motion to dismiss on July 23, 2009. After examining the circuit split on this issue, the District Court determined that the Second Circuit’s analysis in Nicolaou v. Horizon Media, Inc., 402 F.3d 325 (2d Cir.2005) (per curiam), was persuasive and held that Edwards failed to state a claim upon which relief could be granted because her alleged objections and/or complaints to management were not part of an “inquiry or proceeding”:
“Plaintiff does not allege that anyone requested information from her or initiated contact with her in any way regarding the alleged ERISA violations. Nor does she allege that she was involved in any type of formal or informal gathering of information. She states merely that she objected to or complained about certain conduct by Defendants.”
(App. at 13-14 (citations omitted).) Having dismissed Edwards’s ERISA claim, the District Court declined to exercise supplemental jurisdiction over Edwards’s state law claim for wrongful discharge.
Edwards timely appealed, and the Secretary of Labor filed a brief as amicus curiae in support of Edwards’s position.
II.
The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. “We review de novo the District Court’s dismissal of an action under Rule 12(b)(6).” Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., 579 F.3d 304, 307 (3d Cir.2009) (emphasis omitted). Pursuant to Ashcroft v. Iqbal, — U.S. -, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), district courts must conduct a two-part analysis when presented with a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). “First, the factual and legal elements of a claim should be separated.” Id. “The District Court must accept all of the complaint’s well-pleaded facts as true, but may disregard any legal conclusions.” Id. at 210-11. “Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a ‘plausible claim for relief.’ ” Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).
*220 III.
The sole issue on appeal is whether the District Court erred in holding that unsolicited internal complaints are not protected activities under the anti-retaliation provision of Section 510 of ERISA, 29 U.S.C. § 1140.[2] We will affirm.
A. Background
“ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). “The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans.” Id. at 91, 103 S.Ct. 2890. As part of this system, “Congress included various safeguards to preclude abuse and ‘to completely secure the rights and expectations brought into being by this landmark reform legislation.’ ” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting S.Rep. No. 93-127, at 36 (1973), 1974 U.S.C.C.A.N. 4838). One such safeguard is ERISA’s anti-retaliation or “whistle-blower” provision, which provides as follows:
“It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.”
29 U.S.C. § 1140. Put simply, the purpose of the provision is to “proscribe[ ] interference with rights protected by ERISA.” Ingersoll-Rand Co., 498 U.S. at 137, 111 S.Ct. 478.
B. The Circuit Split
The federal Courts of Appeals are split on whether Section 510 encompasses unsolicited internal complaints. The Fifth and Ninth Circuits have held in the affirmative, see Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311 (5th Cir.1994), and Hashimoto v. Bank of Hawaii, 999 F.2d 408 (9th Cir. 1993), while the Second and Fourth Circuits have held in the negative, see Nicolaou, 402 F.3d 325, and King v. Marriott Int’l Inc., 337 F.3d 421 (4th Cir.2003).
The Ninth and Fifth Circuits were the first circuits to consider the issue. In each case, the plaintiff employee filed a complaint under state law alleging wrongful discharge for complaining to supervisors about alleged ERISA violations.[3] Hashimoto, 999 F.2d at 409-10; Anderson, 11 F.3d at 1312-13. Finding that Section 510 of ERISA already provided employees with a remedy, the Ninth Circuit held that *221 the employee’s state law claim was completely preempted by ERISA and remanded the case to allow the state claim to be re-characterized as a federal cause of action. Hashimoto, 999 F.2d at 411-12. The court explained that the failure of Section 510 to protect internal complaints would, in practice, inhibit the effectiveness of the anti-retaliation provision:
“The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.”
Id. at 411. Shortly thereafter, the Fifth Circuit arrived at the same conclusion in Anderson, holding that a state law claim for wrongful discharge was preempted by ERISA in part “because the cause of action would conflict with the enforcement provisions of §§ 502(a) and 510 of ERISA.” 11 F.3d at 1314. The court further explained, in broad terms, “[the employee’s] claim falls squarely within the ambit of ERISA § 510[,]” which “addresses discharges for exercising ERISA rights or for the purpose of interfering with the attainment of ERISA rights, as well as discharges for providing information or testimony relating to ERISA.” Id. (quotations and citations omitted).
Faced with the same issue, the Fourth Circuit has since drawn the opposite conclusion, holding that an employee’s state law wrongful discharge claim is not preempted by ERISA because Section 510 does not protect unsolicited internal complaints. King, 337 F.3d at 427-28. Focusing on “the proper scope of the phrase ‘inquiry or proceeding,’ ” the court analogized Section 510 to the anti-retaliation provision in the Fair Labor Standards Act (FLSA)[4]:
“In the instant case, as well, the use of the phrase ‘testified or is about to testify’ does suggest that the phrase ‘inquir[ies] or proceeding^]’ referenced in section 510 is limited to the legal or administrative, or at least to something more formal than written or oral complaints made to a supervisor. The phrase ‘given information’ does no more than insure that even the provision of non-testimonial information (such as incriminating documents) in an inquiry or proceeding would be covered. And, here as well [ ], the anti-retaliation provision in section 510 is much narrower than the equivalent [in Title VII.][5]”
Id. at 427 (first and second alterations in original; footnote 5 supplied). The Fourth *222 Circuit found that the Ninth and Fifth Circuit decisions in Hashimoto and Anderson, respectively, were not persuasive. According to the court, the Ninth Circuit in Hashimoto improperly “rejected] the most compelling interpretation of the statutory language for a ‘fair’ interpretation,” and the Fifth Circuit in Anderson “merely recited section 510 without even addressing the facial inapplicability of section 510 to intra-office complaints.” Id. at 428.
The sole federal Court of Appeals to address this issue in the context that we are presented with here — where an employee actually brings suit under Section 510 of ERISA itself — is the Second Circuit in Nicolaou. 402 F.3d at 327. Unlike the Fourth Circuit in King, the Second Circuit found that Section 510 of ERISA is “unambiguously broader in scope” than its counterpart in the FLSA. Id. at 328. Nevertheless, the court held that unsolicited internal complaints are not protected activities. First, the court explained that internal complaints could not fall under the term “proceeding” because “proceeding” “refers to the progression of a lawsuit or other business before a court, agency, or other official body[.]” Id. at 329. Second, the court held that, for an internal complaint to constitute an “inquiry,” the employee would need to “demonstrate that she was contacted to meet with [management] in order to give information about the alleged [ERISA violation.]” Id. In other words, the employee’s complaint would need to have been solicited.[6]
C. The Plain Meaning of Section 510
We begin our analysis of ERISA’s anti-retaliation provision “with an examination of ERISA’s statutory language because ‘absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.’ ” Wolk v. Unum Life Ins. of Am., 186 F.3d 352, 355 (3d Cir.1999) (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)) (other quotations and citations omitted). Therefore, “the first step is to determine whether [Section 510] has a plain and unambiguous meaning.” Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir.2005). Words or provisions are ambiguous when “ ‘they are reasonably susceptible of different interpretations.’ ” Id. at 264 (quoting Nat’l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co., 470 U.S. 451, 473 n. 27, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985)). If there is an ambiguity, we look to “the surrounding words and provisions and also to the words in context.” Id.
To reiterate, Section 510 of ERISA provides as follows:
“It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.”
29 U.S.C. § 1140. Since Edwards has undoubtedly “given information” by objecting and/or complaining to management, at issue in this appeal is whether or not Edwards did so in any “inquiry or proceeding.” The Secretary of Labor argues, in its brief as amicus curiae, that “[b]roadly but naturally construed, ‘any inquiry or proceeding’ encompasses plan participants’ *223 complaints to management or plan officials about wrongdoing, and the process by which that information is considered, however informal.” (Secretary Br. at 16.) We disagree.
An “inquiry” is generally defined as “[a] request for information.” Black’s Law Dictionary 864 (9th ed.2009). Here, Edwards does not allege that anyone approached her requesting information regarding a potential ERISA violation. Rather, she made her complaint voluntarily, of her own accord. Under these circumstances, the information that Edwards relayed to management was not part of an inquiry under the term’s plain meaning.
On appeal, Edwards argues that her objections and/or complaints were themselves the inquiry. We disagree. Edwards’s complaints were statements regarding potential ERISA violations, not questions seeking information. Furthermore, because § 1140 protects employees that have “given information,” not employees that have “received information,” a plain reading of the provision indicates that “inquiry” includes only inquiries made of an employee, not inquiries made by an employee. The fact that Edwards’s complaints may have eventually “culminat[ed]” in an inquiry, (see Secretary Br. at 17), underscores the fact that the complaints themselves, without more, do not constitute an inquiry.
Neither is Edwards’s conduct encompassed by the term “proceeding.” A “proceeding” is commonly defined as “[t]he regular and orderly progression of a lawsuit” or the “procedural means for seeking redress from a tribunal or agency.” Black’s Law Dictionary 1324 (9th ed.2009). Here, there is no suggestion that any such formal action has occurred.[7]
In so holding, we follow the Fourth Circuit’s opinion in King. As the King court noted, even beyond the plain meaning of “inquiry” and “proceeding,” the phrase “testified or is about to testify” implies that the phrase “inquiry or proceeding” is limited to more formal actions. See King, 337 F.3d at 427. Not all anti-retaliation statutes are so limited. In drafting § 1140, Congress could have used broad language similar to that present in the anti-retaliation provision in Section 704(a) of Title VII, which extends broad protection to employees that have “opposed any practice made an unlawful employment practice by [Title VII.]” 42 U.S.C. § 2000e-3(a). Congress declined to do so, and, like the court in King, we find this choice to be persuasive. See King, 337 F.3d at 427. Finally, we agree with the Fourth Circuit that the Ninth and Fifth Circuit opinions in Hashimoto and Anderson, respectively, are not compelling. Neither court examined the statutory language of Section 510 in detail: the Fifth Circuit gave the issue cursory treatment, see Anderson, 11 F.3d at 1314, and the Ninth Circuit appeared to focus its analysis on the adoption of a “fair” interpretation, see Hashimoto, 999 F.2d at 411. See also King, 337 F.3d at 428.
Edwards and the Secretary argue that we should give Section 510 a broader reading because ERISA is a remedial statute. This connection is lacking. Although ERISA “should be liberally construed in favor of protecting the participants in employee benefit plans,” see IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir.1986), this does not entitle us to ignore clear statutory language. See Wolk, 186 F.3d at 355 *224 (“[A]bsent a clearly expressed legislative intention to the contrary, [ERISA’s statutory] language must ordinarily be regarded as conclusive.” (quotations and citations omitted)). If Section 510 were ambiguous, we would construe the provision in favor of plan participants. However, as discussed above, we find the provision’s plain meaning to be clear.
Likewise, Edwards and the Secretary argue that Section 510 deserves a broader reading because the failure to protect unsolicited internal complaints would undermine the provision’s purpose, as “it would permit an employer to terminate an employee upon the employee first notifying the employer of the ERISA violation[.]” (Edwards Br. at 14.) This contention must also fail. Presented as we are with clear statuary language, we do not need to speculate as to Congress’s intent. It suffices to note that, had Congress been concerned with such a scenario, Congress could have used broad language mirroring the anti-retaliation provision of Title VII. Congress chose not to do so.
D. Analogous Third Circuit Precedent
Contrary to the assertions of Edwards and the Secretary, the conclusion that Section 510 of ERISA does not protect unsolicited internal complaints does not conflict with our prior case law regarding anti-retaliation statutes. Edwards and the Secretary cite two opinions to that effect: Brock v. Richardson, 812 F.2d 121 (3d Cir.1987), which addresses the scope of Section 15(a)(3) of the FLSA, and Passaic Valley Sewerage Commissioners v. United States Department of Labor, 992 F.2d 474 (3d Cir.1993), which addresses the scope of Section 507(a) of the Clean Water Act (CWA). Neither case is controlling here.
Brock is distinguishable because it concerned a different issue in the context of a different statute. We examined in Brock whether “an employer’s [mistaken] belief that an employee has engaged in protected activity is sufficient to trigger application” of the anti-retaliation provision of the FLSA, and held in the affirmative. 812 F.2d at 123. We did not address whether Section 15(a)(3) of the FLSA protects internal complaints. There is a circuit split on this issue, which we have not yet joined.[8]
Even if we had held in Brock that internal complaints are protected under the FLSA, that conclusion would not be dis-positive here. Section 15(a)(3) of the FLSA and Section 510 of ERISA are not identical. Section 15(a)(3) of the FLSA extends broadly to persons that have “filed any complaint,” without explicitly stating the level of formality required. 29 U.S.C. § 215(a)(3). Section 510 of ERISA, in contrast, extends only to persons that have “given information or [] testified” in an *225 “inquiry or proceeding.” 29 U.S.C. § 1140. The word “complaint” is not even used. Therefore, the conclusion that internal complaints are protected under the FLSA does not require a parallel conclusion under ERISA’s distinct statutory language.
Passaic Valley provides a closer comparison. In Passaic Valley, we examined, as here, whether intracorporate complaints are protected under Section 507(a) of the CWA. 992 F.2d at 477. Section 507(a) provides as follows:
“No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.”
33 U.S.C. § 1367(a). We held in Passaic Valley that the term “proceeding” within Section 507(a) is ambiguous: “The term may reasonably be invoked to encompass a range of complaint activity of varying degrees of formal legal status.” 992 F.2d at 478. Accordingly, we gave Chevron deference to the Secretary of Labor’s Final Decision and Order and held that intracorporate allegations are protected under the CWA. Id. at 478-80.
Although it might appear so at first glance, Passaic Valley is not dispositive here for a couple of reasons, not the least of which is that Passaic Valley addresses Section 507(a) of the CWA, not Section 510 of ERISA. First, to preclude an expansive use of our holding, we did not state in Passaic Valley that the term “proceeding” is necessarily ambiguous in all anti-retaliation provisions. Rather, we expressly stated that the term “proceeding” is ambiguous “within § 507(a) of the Clean Water Act[J” Id. at 478 (emphasis added). In so holding, we avoided the rote application of Passaic Valley in other contexts, such as that of Section 510 of ERISA.
Second, we gave Chevron deference in Passaic Valley to the Secretary of Labor’s “reasonably permissive construction” that “all good faith intracorporate allegations are fully protected from retaliation under § 507(a)[.]” Id. at 480. Contrary to the Secretary’s suggestion here, we do not likewise owe Chevron deference to the Secretary’s allegedly consistent reading of Section 510. Although the Department of Labor is the federal agency in charge of overseeing ERISA, see Mack Boring & Parts v. Meeker Sharkey Moffitt, Actuarial Consultants, 930 F.2d 267, 276 (3d Cir. 1991), we do not apply Chevron deference to “agency litigatpon] positions that are wholly unsupported by regulations, ruling, or administrative practice,” Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In Passaic Valley, we relied on the Secretary’s Final Decision and Order. 992 F.2d at 477. Here, in contrast, the Secretary has not pointed to any regulations, rulings, or other material in support of its position.
Therefore, rather than base our holding on our prior case law regarding Section 507(a) of the CWA, we will ground our decision in the plain meaning of Section 510 of ERISA itself.
IV.
In summary, we agree with the Fourth Circuit’s decision in King that unsolicited internal complaints are not protected under Section 510 of ERISA, 29 U.S.C. § 1140, based on a plain reading of that *226 provision’s terms. We will accordingly affirm the order of the District Court.[9]

. Because Edwards appeals from a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the facts pled by Edwards in her complaint are assumed to be true. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009).

. Edwards also contends, citing a single district court opinion, that she is protected under a separate clause of Section 510, which provides,
"It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this subchapter, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter[.]” 29 U.S.C. § 1140. (See also Edwards Br. at 15-16.) Since Edwards failed to raise this argument in the District Court, it is waived. See DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n. 1 (3d Cir.2007) ("It is well established that arguments not raised before the District Court are waived on appeal.”).

. The employee in Anderson also claimed that he was discharged for refusing to commit acts in violation of ERISA. 11 F.3d at 1312-13.

. Section 15(a)(3) of the FLSA provides that it is unlawful for any person
"to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]''
29 U.S.C. § 215(a)(3). In Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360 (4th Cir. 2000), the Fourth Circuit held that Section 15(a)(3) does not protect internal complaints. Id. at 364. This is the minority view. See note 8, infra.

. Section 704(a) of Title VII provides,
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.”
42 U.S.C. § 2000e-3(a).

. Although its analysis was more nuanced with regard to the term "inquiry,” the Nicolaou court did not view its holding to be in conflict with the Fourth Circuit’s decision in King. See Nicolaou, 402 F.3d at 330.

. As it is not necessary for the disposition of this case, we decline to elaborate on the level of formality required for protection under Section 510. At the very least, the provision would protect information given in legal and administrative proceedings.

. The First, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have held that internal complaints are protected under the FLSA. See Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 626 (5th Cir.2008); Lambert v. Ackerley, 180 F.3d 997, 1004 (9th Cir.1999) (en banc); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 41 (1st Cir.1999); E.E.O.C. v. Romeo Cmty. Sch., 976 F.2d 985, 989 (6th Cir.1992); E. E.O.C. v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir.1989); Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984); Brennan v. Maxey’s Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975). The Second and Fourth Circuits have held to the contrary. See Ball, 228 F.3d at 364; Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir.1993). Finally, the Seventh Circuit has taken a middle approach. See Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838, 840 (7th Cir.2009) (holding that written, but not oral, internal complaints are protected based on the inclusion of the verb '‘filed”), cert. granted, - U.S. -, 130 S.Ct. 1890, 176 L.Ed.2d 361 (2010). We have cited the majority approach with approval in dicta. See Brock, 812 F.2d at 124.

. In light of our disposition, we decline to address A.H. Cornell’s additional arguments that Edwards cannot maintain a claim against Cornell and Closterman because they "merely served as the company’s agents,” (A.H. Cornell Br. at 7), and that, regardless of the outcome of this appeal, the allegations in Edwards’s complaint fail to satisfy the pleading requirements articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).