COWEN, Circuit Judge,
dissenting.
Unlike the Court, I conclude that ERISA’s anti-retaliation provision does indeed protect “an employee’s unsolicited internal complaints to management.” Accordingly, I must respectfully dissent.
The majority is obviously correct that the statutory interpretation process must begin with the actual language of Section 510. Specifically, the statutory language at issue is generally regarded as conclusive, at least in the absence of a clearly expressed legislative intention to the contrary. See, e.g., Wolk v. UNUM Life Ins. of Am., 186 F.3d 352, 355 (3d Cir.1999). I further agree with the majority that “the first step is to determine whether [Section 510] has a plain and unambiguous meaning.” Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir.2005) (citing Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)). I, however, believe that the statutory language used in this anti-retaliation provision is ambiguous. In fact, as explained below, I find it highly doubtful that Congress could have ever intended for its anti-retaliation provision to apply in the manner suggested by the majority, in particular because the majority’s interpretation leaves totally unprotected a certain category of conduct (as well as the employees who may engage in such conduct) that this remedial statutory provision was enacted to protect in the first place. See, e.g., Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199, 210 (3d Cir.2008) (stating that we “avoid constructions that produce ‘odd’ or ‘absurd results’ or that are ‘inconsistent with common sense’ ” (quoting Public Citizen v. U.S. Dep’t of Justice, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); 2A N. Singer, Sutherland Statutes and Statutory Construction § 45:12, at 92 (6th ed.2000))).
Initially, the majority does acknowledge at least some of the broad considerations underlying ERISA and its anti-retaliation provision, but it generally fails to give these various considerations the weight they deserve. Accordingly, the majority recognizes that ERISA, as a remedial statute, “should be liberally construed in favor of protecting the participants in employee benefit plans.” IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir.1986) (citations omitted). It likewise states that: (1) ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries, see, e.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); (2) the statute imposes different standards and requirements with respect to the operation of the plans themselves; id. at 91,103 S.Ct. 2890; (3) Congress similarly included various safeguards in order to deter abuse and “ ‘to completely secure the rights and expectations brought into being by this landmark reform legislation,’ ” Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting S.Rep. No. 93-127, at 36 (1973)); and (4) Section 510, designed to eliminate interference with the rights protected by ERISA, represents one of these critical statutory safeguards, id. I further note that “Con *227 gress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits.” Id. at 143, 111 S.Ct. 478 (citing S.Rep. No. 93-127, at 35-36; H.R.Rep. No. 93-533, at 17 (1973)). In other words, this anti-retaliation provision plays a very important and even essential role in the proper implementation of the whole ERISA scheme because it actually “ ‘helps to make [ERISA’s] promises credible.’ ” Inter-Modal Rail Employees Ass’n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 515, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997) (quoting Heath v. Varity Corp., 71 F.3d 256, 258 (7th Cir. 1995)).
Far from liberally construing this remedial legislation in favor of the very persons it was designed to protect, the majority adopts an ultimately unsustainable interpretation. At least at times, it appears to follow the very narrow approach adopted by the Fourth Circuit in King v. Marriott International, Inc., 337 F.3d 421 (4th Cir. 2003), as opposed to the more moderate position taken by the Second Circuit in Nicolaou v. Horizon Media, Inc., 402 F.3d 325 (2d Cir.2005) (per curiam). However, even the Second Circuit disagreed with the Fourth Circuit’s belief “that Congress’s use of the phrase ‘testify or about to testify’ dictates” the conclusion “that Section 510 protects those who engage in ‘something more formal than written or oral complaints made to a supervisor.’ ” Id. at 330 n. 3 (quoting King, 337 F.3d at 427). The Nicolaou court quite properly read this “reference to testimony” language as “wholly irrelevant to our understanding of the language ‘given information ... in any inquiry or proceeding.’ ” Id.
More broadly, I acknowledge that the Fifth Circuit did not examine this issue in any real detail in its ruling in Anderson v. Electronic Data Systems Corp., 11 F.3d 1311 (5th Cir.1994). On the other hand, the majority itself quotes the Ninth Circuit’s reasonable and ultimately persuasive explanation for why it concluded in Hashimoto v. Bank of Hawaii, 999 F.2d 408 (9th Cir.1993), that Section 510 does, in fact, encompass internal workplace complaints. It bears repeating here:
.... The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.
Id. at 411. Like the Ninth Circuit, I find it difficult to believe that Congress could have ever intended to exclude from the protection of its remedial anti-retaliation provision employees who are terminated because they bring an ERISA-related problem to the attention of their superiors.
Likewise, the majority’s narrow interpretation of the specific term “inquiry” appears questionable at best. In addition to leaving the crucial “first step” unprotected, the Second Circuit’s whole “inquiry” standard could be difficult to apply and even unworkable in certain circumstances. Certain conduct may clearly constitute an “inquiry,” such as the plaintiffs alleged activities in Nicolaou itself, which included contacting her employer’s outside attorney regarding an alleged underfunding problem and then, after the lawyer conducted an inquiry of his own and evidently at the request of the lawyer, meeting with both him and the president of the company. Nicolaou, 402 F.3d at 326-27, 329-30. On the other hand, an internal workplace complaint would quite naturally constitute a preliminary step before a formal or infor *228 mal inquiry is launched (and such a complaint may even have been necessary to trigger the investigation in the first place). However, where does one draw the line between such an initial step, which the Second Circuit and majority have held is not protected by the statutory provision, and otherwise “protected” statements purportedly made as part of some sort of inquiry? For instance, suppose an employee like Edwards complains to her superior, the superior asks some follow-up questions, and the employee responds to these questions. Are the informal responses to some impromptu questions to be regarded as protected because they evidently were made as part of an “inquiry?” In turn, why should such responses be protected while, at the same time, an employer is essentially permitted (and perhaps, in essence, encouraged) to fire an employee immediately after she makes an informal complaint instead of conducting an investigation of some sort?
In addition, the majority goes on to hold that Section 510 only protects employees who give information as part of the inquiry, as opposed to those individuals who actually conduct the inquiry and thereby “received information.” Admittedly, the Second Circuit in Nicolaou did deal with a plaintiff who had, inter alia, been invited to attend a meeting with both the president and outside counsel and stated her opinion that a 401(k) plan was underfunded. Id. Nevertheless, the majority’s approach appears to be highly questionable at best insofar as it leaves an entire class of employees, who, given their responsibility to conduct potentially sensitive and damaging investigations into possible ERISA violations and related matters, would need protection from retaliation even more than employees who merely answers some questions.
Even though these various considerations clearly weigh in favor of the more expansive interpretation offered by the Fifth and Ninth Circuits, Edwards, and the Secretary, I might still be inclined to agree with the majority’s ultimate result here based on the language actually used in the statutory provision. Nevertheless, analogous Third Circuit decisions clearly indicate that the language in Section 510 is ambiguous and that this Court should, in turn, interpret such language as encompassing internal workplace complaints.
As a general matter, I recognize that the case law addressed different statutes using different statutory language, and these decisions accordingly do not represent technically binding precedents at this juncture. The fact that Congress has chosen to use different terms in different anti-retaliation provisions should also not be overlooked. Accordingly, I do not suggest that Section 510 should be interpreted as broadly as its Title VII counterpart, which, among other things, expressly covers employees who have “opposed any practice made an unlawful employment practice by [Title VII.]” 42 U.S.C. § 2000e-3(a). Nevertheless, this Court obviously should strive to treat relatively similar statutory provisions, contained in similar remedial federal statutes, in a clear and consistent fashion. In any case, as highlighted below, at least some of the terms used in Section 510 are actually more expansive than the equivalent terms contained in other anti-retaliation provisions.
I start with a case that actually held that the term “proceeding” is ambiguous and gave Chevron deference to the Secretary’s formal determination that intracorporate complaints are, in fact, protected activities: Passaic Valley Sewerage Commissioners v. United States Department of Labor, 992 F.2d 474 (3d Cir.1993).
*229 The Passaic Valley Court held that the statutory term “proceeding,” which is contained in both the CWA provision and its ERISA counterpart, is “ambiguous” because it “may reasonably be invoked to encompass a range of complaint activity of varying degrees of formal legal status.” Id. at 478. It then added “that the [CWA’s] purpose and legislative history allow, and even necessitate, extension of the term ‘proceeding’ to intracorporate complaints.” Id. In other words, the protection provided by the section “would be largely hollow if it were restricted to the point of filing a formal complaint with the appropriate external law enforcement agency.” Id. “Employees should not be discouraged from the normal route of pursuing internal remedies before going public with their good faith allegations.” Id. Instead, they should be encouraged to notify management of their observations before any formal investigations and litigation are initiated, thereby providing management with the opportunity to correct, justify, or clarify policies or otherwise facilitate prompt remediation and compliance. Id. at 478-79. Furthermore, an employee’s non-frivolous complaint should not have to be guaranteed to withstand the scrutiny of review before meriting legal protection “for the obvious reason that such a standard would chill employee initiatives in bringing to light perceived discrepancies in the workings of their agencies.” Id. at 479. In addition, the Court in Passaic Valley observed that “the whistle-blower provision of the Clean Water Act mirrors that of several other federal environmental, safety and energy statutes,” which have also been broadly construed in the case law. Id. (footnote omitted) Therefore, “[although the present case is the first to present us with this issue in the context of the Clean Water Act, the weight of other circuits’ precedent reviewing analogous statutes concurs with the Secretary’s own broad inclusion of intracorporate complaints within the protective scope of the statute.” Id. at 480.
This reasoning clearly supports interpreting Section 510, which is generally analogous to the anti-retaliation section of the CWA, as encompassing internal workplace complaints. In turn, I have no choice but to reject the majority’s efforts to minimize and distinguish this prior ruling.[1]
In particular, its assertion that the Passaic Valley Court attempted to avoid any “rote application” of its holding overlooks the crucial fact that the Court itself turned to other anti-retaliation provisions in its analysis of the CWA section. For instance, it noted that the anti-retaliation provision in the FLSA is among the statutory provisions that have been expansively construed “to lend broad protective coverage to internal complainants.” Id. at 479. In any case, I do not believe that following the example set in Passaic Valley by carefully taking into account a prior Third Circuit opinion represents any kind of “rote” exercise.
Furthermore, the CWA provision expressly prohibits discrimination against any employee who has “filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.” 33 U.S.C. § 1367(a). At least on the surface, this “filed” and “instituted” lau *230 guage evidently contemplates something more formal than, inter alia, an unsolicited internal complaint to one’s superiors. Therefore, I find that Section 510, with its “given information” and “inquiry” language, appears to be even broader than its environmental counterpart, addressed (and broadly construed) in Passaic Valley.
In addition, the Court’s ruling in Brock v. Richardson, 812 F.2d 121 (3d Cir.1987), provides yet further support for concluding that Section 510 protects unsolicited internal complaints.
Initially, the majority is correct that Brock addressed the question of whether the anti-retaliation provision of the FLSA is triggered by an employer’s ultimately mistaken belief that an employee has engaged in otherwise protected activity under the statute. Id. at 122-25. In answering this question in the affirmative, the Court in Brock quite appropriately turned to the same kind of broad policy considerations discussed in Passaic Valley. Id. at 123-25. For instance, it noted that Congress, instead of seeking to secure compliance through detailed and ongoing governmental supervision of employer payrolls, put in place a system relying on information and complaints from the employees itself. Id. at 124. “Thus, the [Supreme] Court has made clear that the key to interpreting the anti-retaliation provision is the need to prevent employees’ ‘fear of economic retaliation’ for voicing grievances about substandard conditions.’ ” Id. (quoting Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (I960)). Significantly, the Brock Court even indicated a willingness to go beyond the bare language of the statutory provision itself, stating that “courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language.” Id. As an example, it turned to the Tenth Circuit’s ruling in Love v. RE/MAX of America, Inc., 738 F.2d 383 (10th Cir.1984), which applied the anti-retaliation provision “to protect employees who have protested Fair Labor Standards Act violations to their employers.”[2] Brock, 812 F.2d at 125 (citing Love, 738 F.2d at 387).
The majority points out that the anti-retaliation provision in the FLSA differs from the ERISA counterpart. I agree, but the differences here actually weigh against the interpretation offered by the majority. Just like the anti-retaliation provision in the CWA, the FLSA provides that it is unlawful to discharge or discriminate against an employee because he or she “has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.” 29 U.S.C. § 215(a)(3) As previously noted with respect to Passaic Valley, this language arguably contemplates some sort of formal filing. See, e.g., Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 364 (4th Cir. 2000) (finding that FLSA does not protect intra-company complaints because, among other things, the term “proceeding” was “modified by attributes of administrative or court proceedings,” the term “instituted” indicates “a formality that does not attend an employee’s oral complaint to his supervisor,” and “testimony” consists of “statements given under oath or affirmation” (citations omitted)). On the other hand, Section 510 refers to an “inquiry,” as opposed to merely a “proceeding,” as well as “giv[ing] information,” in contrast to mere “testimony.” As even the majority *231 recognizes, the Second Circuit accordingly observed that “the plain language of ERISA Section 510” is “unambiguously broader in scope than Section 15(a)(3) of FLSA.” Nicolaou, 402 F.3d at 328.
In the end, I am unable to agree with the majority’s ruling here in light of the statutory language at issue, the expansive purposes and principles underpinning ERISA and its anti-retaliation provision, and (especially) prior decisions[3] by this very Court broadly interpreting similar anti-retaliation statutes in other federal statutes. I accordingly would reverse the ruling of the District Court and remand for further proceedings.

. I do, however, agree with the majority’s finding that we do not owe Chewon deference to the Secretary's reading of Section 510.

. It is significant that the Passaic Valley Court also relied on Love in its analysis of the CWA's anti-retaliation provision. Passaic Valley, 992 F.2d at 479.

. In addition to the rulings in Passaic Valley and Brock, I further note that this Court adopted a somewhat similar approach to the False Claims Act's anti-retaliation provision in Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176 (3d Cir.2001). The Hutchins Court noted, inter alia, that protected activities “can include internal reporting and investigation of an employer's false or fraudulent claims.” Id. at 187 (citing United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 742 (D.C.Cir.1998)).