**Jessica K. HASHIMOTO, Plaintiff–Appellant,**

v.

**BANK OF HAWAII, et al. Defendants–Appellees.**

**No. 92–15167.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1993.

Decided July 15, 1993.

As Amended Nov. 5, 1993.

Kenneth B. Hipp and Barbara A. Petrus, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendants-appellees.

Before: GOODWIN, TANG and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Jessica Hashimoto appeals the grant of summary judgment in favor of the Bank of Hawaii (the Bank) and its codefendants in her action for wrongful discharge and breach of contract. The basis of the judgment was preemption by the Employees Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. §§ 1001, et seq. We agree in that conclusion but also hold that Hashimoto's complaint should be recharacterized as an ERISA claim under 29 U.S.C. § 1140. We remand for trial on this basis.

## PROCEEDINGS

On January 10, 1991 Hashimoto began this case in a Hawaii state court with a complaint alleging that the Bank and Duane D. Feekin and Judith Wetzel and other employees of the Bank had violated the Hawaii Whistle Blowers' Protection Act, Haw.Rev.Stat. §§ 378–61, et seq. Section 378–62 states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of a law or rule adopted pursuant to law of this State, a political subdivision of this State, or the United States, unless the employee knows that the report is false; ...

Hashimoto asserted that several times between April 1989 and October 12, 1990 she had complained to Feekin and Wetzel about "potential and/or actual violations by the Bank of the reporting and disclosure requirements and fiduciary standards of ERISA."

E. Cooper Brown and David K. Colapinto, Kohn, Kohn & Colapinto, and Kathleen T. Quinn, Washington, DC, for plaintiff-appellant.

Specifically, she noted that Feekin had directed her to reimburse a former employee from a profit-sharing plan for taxes that Hashimoto had "properly withheld from a lump sum distribution" of his account. She also noted that Wetzel had instructed her "to recalculate a former employee's pension plan benefit and to use final pay, not final average pay" in violation of ERISA regulations. Hashimoto contended that but for her objections she would not have been discharged from employment. She also alleged that the Bank had failed to follow its own procedures manual in terminating her and so was in breach of contract.

On February 11, 1991 the Bank moved to remove the case to the federal district court. Subsequently, the Bank moved for summary judgment on the grounds that Hashimoto's contract claim was without merit and that the whistle blower's count was preempted by ERISA. The court put the matter in these terms:

> In the instant case, plaintiff's claim under the HWBPA does not easily fall on either side of the preemption line. Often, when a court has found ERISA preemption, the injury underlying the state cause of action resulted from the alleged improper administration of a benefit plan. Here, as in *Authier* [*v. Ginsberg*, 757 F.2d 796, 800 (6th Cir.), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985)], plaintiff's injury arises from an allegation of improper administration, whether or not the allegations were correct. Plaintiff contends that she was terminated solely in retaliation for "complaints" even though the complaints may have been unfounded. Even though plaintiff's claim under the HWBPA does not formally depend upon the existence of an ERISA plan, plaintiff's claim would require the court to evaluate the substance of the complaints.

To establish a wrongful discharge claim under the HWBPA, a plaintiff must prove, in part, that the employer terminated her employment because:

> 1. The employee or person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of law or rule adopted pursuant to [a] law of this State, ... unless the employee knows that the report is false; or
> 2. An employee is requested by a public body to participate in an investigation, hearing, ...

Haw.Rev.Stat. § 378–62. In adjudicating a claim under the HWBPA, a court is forced to evaluate the substance of the violation or suspected violation. For example, in order to determine whether an employee knew that the report was false, the court must decide whether the employee had reasonable grounds for believing that violations had occurred.

In this case, plaintiff alleges that her discharge was in retaliation for complaints she made as to violations of ERISA involving the Bank of Hawaii's (i) profitsharing plan, (ii) pension plan, and (iii) severance plan. As such, in order to determine whether her complaints were a motivating factor in her discharge, the court must find not only the existence of an ERISA plan but also must interpret ERISA to determine whether a violation of law existed or potentially existed. Therefore, plaintiff's HWBPA claim is preempted by ERISA because an adjudication of the claim necessarily requires an adjudication of ERISA–related issues.

The court also granted summary judgment against Hashimoto on her claim for breach of contract.

Hashimoto appeals.

## ANALYSIS

■ Hashimoto had a contract terminable at will by the Bank. Absent a public policy exception, such a contract is terminable at will. *See Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625, 631 (1982). Her breach of contract claim was therefore without merit. We turn to the difficult question of federal preemption of her tort claim. As is typical in cases involving federal preemption of state law, a line must be picked out by court decisions as to what is preempted and what is not preempted. The breadth of ERISA preemption is considerable:

> "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Under this "broad common-

sense meaning," a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (citations omitted).

As we have summarized the matter:

To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA. State tort and contract causes of action, for instance, don't apply to transactions between plans and their participants, *see, e.g., Pilot Life* [*Ins. Co. v. Dedeaux*], 481 U.S. [41] at 47–48, 107 S.Ct. [1549] at 1552–1553 [95 L.Ed.2d 39], because the relationship between plan and participant is, under ERISA, a matter of exclusively federal concern, *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Wrongful discharge laws don't apply to employee terminations carried out to avoid benefit payments, because the employer-employee relationship is—insofar as it deals with benefit plans—also an exclusively federal matter. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). State law can, however, apply to transactions between plans and their creditors or their landlords or their own employees, because those relationships are outside ERISA's purview.

*General Am. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1522 (9th Cir.1993).

As the district court pointed out, a trial of Hashimoto's claim would require an interpretation of the ERISA plans as to which she raised her objections about the Bank's fulfillment of its fiduciary obligations. Even though such examination by the court would only have to proceed to the point of determining Hashimoto's good faith, some interpretation of ERISA would probably be required.

In addition, ERISA itself provides a remedy for a fiduciary who is discharged because she "has given information or has testified or

is about to testify in any inquiry or proceeding relating to [ERISA] or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. This statute is clearly meant to protect whistle blowers. It may be fairly construed to protect a person in Hashimoto's position if, in fact, she was fired because she was protesting a violation of law in connection with an ERISA plan. The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.

■ The ERISA whistle blower provision states: "The provisions of section 1132 of this title shall be applicable in the enforcement of this section." If this provision has the effect of limiting possible plaintiffs under § 1140 to those persons that § 1132 declares "empowered to bring a civil action"—a question we need not decide now—Hashimoto is still entitled to bring the action because as a fiduciary she is empowered to bring a civil action under § 1132 to enforce § 1140, ERISA's whistle blower provision. Normally the ERISA fiduciary will be a corporate body. It would make little sense to restrict the whistle blower protection to the corporation and not extend it to the agents by which the corporation must act. "Fiduciary" includes not only the trustee under an ERISA plan but agents of the trustee:

The statute [ERISA] provides that not only the persons named as fiduciaries by a benefit plan, *see* 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, *see* § 1002(21)(A), is an ERISA "fiduciary." Fiduciaries are assigned a number of detailed duties and responsibilities, which include "the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." .

*Mertens v. Hewitt Assocs.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161

(U.S.1993) (citation omitted). Consequently, we hold the Hawaii Whistle Blower's Act, to the extent an ERISA violation is involved, preempted by the specific provision of ERISA protecting whistle blowers such as Hashimoto presents herself to be in this case.

Because the preemption is total, what appeared on its face to be a state cause of action is in fact a federal cause of action and must be recharacterized as such. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987).

Hashimoto also appeals sanctions awarded against her in the course of litigation. We find no abuse of discretion and affirm the imposition of the sanctions by the district judge.

Accordingly, the judgment in favor of the Bank is **REVERSED in part and AFFIRMED in part** and the case is **REMANDED** for trial.