In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3291

VICTOR GEORGE,

*Plaintiff-Appellant*,

*v.*

JUNIOR ACHIEVEMENT OF CENTRAL INDIANA, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-0220-JMS-MJD—**Jane E. Magnus-Stinson**, *Judge*.

ARGUED APRIL 4, 2012—DECIDED SEPTEMBER 4, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and
MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In the summer of 2009
Victor George, a vice president of Junior Achievement
of Central Indiana, Inc., discovered that money with-
held from his pay was not being deposited into his re-
tirement account and health savings account. Over the
next few months he lodged complaints with Junior
Achievement's accountants and some executives, in-

cluding Jennifer Burk, its President and Chief Executive Officer. He contacted the United States Department of Labor but declined to file a written complaint. In October George raised the issue with two members of Junior Achievement's board. That month he received checks for about $2,600 to make up for the missed deposits plus interest.

George was contemplating retirement. His employment agreement ran until June 30, 2010, but in late 2009 he had discussions with Burk and others about retiring in April 2010. On January 4, 2010, Burk told George not to come to work the next day. Burk later discovered that George had drawn down the account containing his deferred compensation. She believed that George had acted prematurely. Junior Achievement's attorney wrote a letter stating that George's termination was effective as of December 31, 2009, and demanding that he restore the money to the deferred-compensation account. In response George told Burk that an amendment to his employment agreement had changed the vesting date for his deferred-compensation account to December 1, 2009. Junior Achievement now concedes that George was entitled to withdraw the funds when he did, but it did not rescind his discharge.

An employer's failure to deposit money withheld from an employee's paycheck into that employee's retirement account is a breach of the employer's duties as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA). See 29 U.S.C. §1104(a). George protested his employer's violation of that duty

and maintains that the protests led to his firing. Section 510 of ERISA prohibits retaliation "against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this [Act]". 29 U.S.C. §1140. Junior Achievement argues that the language does not cover George's complaints, and the district court agreed. It granted Junior Achievement's motion for summary judgment on the ERISA claim and dismissed George's state-law claims without prejudice. 2011 U.S. Dist. LEXIS 111846 (S.D. Ind. Sept. 28, 2011).

The district judge observed that courts of appeals have disagreed about the scope of §510: Some circuits have observed that "testify" and "proceeding" denote formal actions (although these circuits disagree about the level of formality required) and concluded that "inquiry" therefore also should be understood as a formal proceeding. See *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 222–24 (3d Cir. 2010); *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 330 (2d Cir. 2005); *King v. Marriott International, Inc.*, 337 F.3d 421, 427–28 (4th Cir. 2003). Two other circuits have held that §510 applies to unsolicited informal complaints. *Anderson v. Electric Data Systems Corp.*, 11 F.3d 1311, 1313, 1315 (5th Cir. 1994); *Hashimoto v. Bank of Hawaii*, 999 F.2d 408, 411 (9th Cir. 1993). The ninth circuit stated that reporting misconduct is a necessary step in the commencement of any formal inquiry and that, unless informal beginnings are covered, employers would be induced to dismiss employees as soon as they complained or asked a barbed question. The district court thought the

holdings of *Anderson* and *Hashimoto* to be atextual and followed *Edwards*: §510's language does not protect employees who make "unsolicited complaints that are not made in the context of an inquiry or a formal proceeding." 2011 U.S. Dist. LEXIS 111846 at *17–22.

The district court was right to rely on the text. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1331 (2011). This text's interpretation, however, is not straightforward. The provision is a mess of unpunctuated conjunctions and prepositions. Although the district court concluded that the language is unambiguous, 2011 U.S. Dist. LEXIS 111846 at *22, it is anything but. See also *Edwards*, 610 F.3d at 224. When dealing with ambiguous anti-retaliation provisions, we are supposed to resolve the ambiguity in favor of protecting employees. See *Kasten*, 131 S. Ct. at 1333–35; *Crawford v. Metropolitan Government of Nashville*, 555 U.S. 271, 278–79 (2009).

Junior Achievement does not quarrel with George's contention that he has satisfied the first part of §510 by "giv[ing] information" to executives such as Burk. It denies, however, that any "inquiry" occurred. The phrase "has given information or has testified or is about to testify" provides context that helps us understand "inquiry." The clause "has given information" covers every kind of communication, while "has testified or is about to testify" denotes a type of communication in a more formal setting, such as a trial or administrative hearing. The latter language implies a level of formality—but not necessarily formality in "giv[ing] information". A natural inference from the fact that the statute

refers to "giv[ing] information" in addition to testifying is that "giv[ing] information" covers informal communications—and, if informal communications are covered, "inquiry" cannot be limited to formal proceedings.

The parties' disagreement centers on "inquiry" in the prepositional phrase "in any inquiry or proceeding". "Inquiry" could mean something official, such as the investigation that the Department of Labor conducts before deciding whether to file suit under ERISA, but sometimes an inquiry means nothing more than a question. Dictionaries include both formal and informal understandings of "inquiry." Junior Achievement favors the formal understandings, but *Kasten* warns against discarding definitions that would make sense in the statutory context. *Kasten* held that retaliation because an "employee has filed any complaint" (29 U.S.C. §215(a)(3)) is not limited to written filings. 131 S. Ct. at 1336. The Court found it significant that the word "filed" sometimes refers to oral statements. *Id*. at 1331–33. Similarly, one common usage of "inquiry" is as a synonym for "question." Unless the structure of §510 makes equating "inquiry" and "question" incongruous, *Kasten* tells us, we should allow the informal sense of "inquiry" as well as the formal one.

Both the initial clauses in §510 and the prepositional phrase that modifies them employ the disjunctive, which implies that informal and formal approaches are separate tracks, both of which are covered. Section 510 can be parsed this way:

((has given information) *or* (has testified or is about to testify))

**in** (any ((inquiry) *or* (proceeding))).

Likewise we can group the actions and settings based on formality:

((has given information) **in** (any inquiry))

*or* ((has testified or is about to testify) **in** (any proceeding)).

This understanding about which words go with which other words is not compelled by rules of grammar—the language *is* ambiguous—but clues including the similar ordering of the informal and formal options lend support to splitting the provision into two parallel tracks.

Junior Achievement contends that, if "question" is one meaning of "inquiry", then that sense must apply to questions asked *of* the employee but not questions asked *by* an employee. *Edwards*, 610 F.3d at 223, came to this conclusion. We do not see it this way, however. The statute does not specify who asks the question or, more generally, initiates the inquiry. There is no linguistic reason why "inquiry" cannot refer to the employee's questions as well as the employer's. Most questions (or observations) will lead to questions in return; after George complained, managers at Junior Achievement asked questions of him. Treating §510 as covering only half of the dialogue would not make sense.

Because §510 refers to inquiries without specifying who is doing the inquiring, it logically covers employees' inquiries. *Crawford* provides some support for this understanding. Title VII's anti-retaliation provision makes it "unlawful . . . for any employer to discrim-

inate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]". 42 U.S.C. §2000e–3(a). In *Crawford* the employer proposed appending "actively" and "consistently" to "opposed," but the Court concluded that such elaborations are unwarranted and held that employees are protected whether they "oppose" unlawful practices spontaneously or in response to questions received from others. 555 U.S. at 276–79. Junior Achievement proposes to add modifiers such as "formal" or "solicited" to the word "inquiry" in §510. Just as in *Crawford*, we must enforce the text as enacted, without the additions. See also *Kasten*, 131 S. Ct. at 1330. The grammatical structure and functions of §510 do not support reading the statute as if it read: "for giving information . . . in *response to* any inquiry" (adding the italicized words to the enacted text). *Crawford* admonishes us to resist the urge to read words into statutes.

The preposition "in"—in the phrase "*in* any inquiry or proceeding" (emphasis added)—offers some support for Junior Achievement's position. Substitute "question" for "inquiry" in this phrase, and it is not grammatical. Still, we think the prepositional phrase to be primarily concerned with a setting—the "in" tells us that the information has to be part of, rather than extraneous to, the inquiry or proceeding. It supplies a location, a "where." Giving information in a question means that the information is imparted in the form of a question; that is a *how* rather than a *where*.

Context tells us that all possible definitions of the word "inquiry" cannot be plugged in directly; it cannot

include all possible questions. For the purpose of this provision the apt informal usage of "inquiry" might be "[t]he action of asking or questioning". 7 *The Oxford English Dictionary* 1010 (2d ed. 1989). That phrase *could* be substituted for "inquiry" in §510. The setting for this action would be the *where* in which the giving of information occurs and could range from a full-fledged corporate inquiry to a brief informal inquiry where the employee gives information in the same breath as asking a question. This construction would not restrict the scope of the covered conduct because, any time there is a question, there must also be someone asking it, but it does ease concerns of imperfect parallel construction. This provision could never be mistaken for beautiful prose but still, given *Kasten* and *Crawford*, accepting some awkwardness is better than treating §510 as a whole as limited to formal proceedings or employer-initiated inquiries.

The Secretary of Labor filed an *amicus curiae* brief supporting George. She filed briefs in *Edwards* and *Nicolaou* as well and believes that her briefs collectively provide an understanding of §510 to which the courts must defer under *Auer v. Robbins*, 519 U.S. 452, 462 (1997). Some Justices have questioned the propriety of giving *Chevron* deference (see *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)) to positions taken in briefs, and the Court as a whole has flagged the subject for further attention. See *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2165–69 (2012). The Court left the subject open in *Christopher*, and we can do so here as well, because *Chevron* applies only

when an agency has the authority to issue regulations or enforce the rules in administrative proceedings. Where "Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of . . . rights of action arising under the statute", *Chevron* does not apply—for the premise of *Chevron* is delegation to an agency. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990). The Secretary has no delegated rulemaking or adjudicative authority concerning §510; instead the Secretary acts as a prosecutor, bringing suits asking for judicial enforcement. See 29 U.S.C. §1132(a)(5), (e)(1). So although we give the Secretary's arguments respectful consideration, we do not "defer" to the Department's position. See *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).

Most of the Secretary's arguments have been addressed already, but she offers one contention that neither George nor any other court of appeals embraces. It is that, even if "inquiry" means formal inquests, the initial grievance by the employee could be considered the first part of that process just as a complaint is the first step in civil litigation. See *Hashimoto*, 999 F.2d at 411; see also *Neal v. Honeywell Inc.*, 33 F.3d 860, 863–64 (7th Cir. 1994) (the False Claims Act's anti-retaliation provision covers initial investigations as the first step in an "action filed or to be filed"). This contention has force. Consider: a complaint standing alone is not "civil litigation," but it is still the first part of the formal litigation process. Unsolicited complaints often require investigation by the government or employer, making further action—that is, a formal "inquiry"—inevitable.

See *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 572–73 (1985) (discussing an ERISA fiduciary's duties to ensure that the plan's funds are not misused). If at the end of an investigation the initial complaint would be considered part of the "inquiry," should that complaint be excluded just because the investigation halts early (here, because the employer made good the injury)?

We conclude that the best reading of §510 is one that divides the world into the informal sphere of giving information in or in response to inquiries and the formal sphere of testifying in proceedings. This means that an employee's grievance is within §510's scope whether or not the employer solicited information. It does not mean that §510 covers trivial belly-aches—the statute requires the retaliation to be "because" of a protected activity. See *Kasten*, 131 S. Ct. at 1334–35. Someone must ask a question, and the adverse action must be caused by the question or the response. What's more, the grievance must be a plausible one, though not necessarily one on which the employee is correct. We have held that the anti-retaliation provision of Title VII does not protect employees who make insubstantial complaints. See, e.g., *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890–92 (7th Cir. 2004). That's equally true for §510.

George notified Junior Achievement of the potential breach of its fiduciary duties and asked (repeatedly) what would be done to remedy the situation. Those conversations involved an "inquiry," as we understand

that word, because Junior Achievement responded to them rather than ignoring them. (If it had ignored them, they could not have caused the discharge.) The district court must decide whether there is some other ground on which this case may be resolved short of trial, or whether a trial on causation is necessary. The judgment of the district court is vacated, and the case is remanded for proceedings consistent with this opinion.