HELENE N. WHITE, Circuit Judge
(dissenting).
I respectfully dissent.
The question whether section 510 protects unsolicited employee complaints has split the circuits. The Fifth, Seventh, and Ninth Circuits have interpreted § 510 to protect an employee’s “unsolicited internal complaint.” In contrast, the Second, Third, and Fourth Circuits have interpreted § 510 as only protecting employees when the employer asks the first question/initiates the inquiry.
I do not agree that § 510’s “plain meaning” is easily ascertained; nor do I agree that the Supreme Court’s most recent guidance in interpreting anti-retaliation provisions, Kasten v. Saint-Gobain Per *343 formance Plastics Corp., — U.S. -, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011), is inapposite here. I would follow the most recent circuit court opinion on point, George v. Junior Achievement of Central Indiana, Inc., 694 F.3d 812 (7th Cir.2012). There, the Seventh Circuit observed that § 510 “is a mess of unpunctuated conjunctions and prepositions. Although the district court concluded that the language is unambiguous, it is anything but.” Id. at 814 (internal citations omitted). George, the only post-Kasten circuit court decision, applied Kasten’s interpretive guidance, observing that that the term “inquiry” “sometimes means nothing more than a question,” and that § 510 protects unsolicited internal employee grievances regardless whether the employer or employee initiated the “inquiry.” Id. at 815, 817.
I. Supreme Court Guidance on the Interpretation of Anti-Retaliation Provisions—Kasten (2011) and Crawford (2009)
Two relatively recent Supreme Court decisions construed anti-retaliation provisions, Kasten, and Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee, 555 U.S. 271, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009) (reversing the Sixth Circuit). Neither involved § 510 of ERISA, but both demonstrate the trend of the Court to interpret anti-retaliation provisions to afford broad protection of employees.
A. Crawford’s Interpretation of Title VII
The Crawford Court interpreted Title VIIs opposition clause, 42 U.S.C. § 2000e-3(a), which makes it “unlawful ... for an employer to discriminate against any ... employe[e] ... because he has opposed any practice made ... unlawful ... by this subchapter.” Crawford, 555 U.S. at 276, 129 S.Ct. 846. The issue was whether protection should be extended to an employee who “speaks out about discrimination not on her own initiative, but in answering questions during” an investigation. Id. at 273, 129 S.Ct. 846. The Court held that the protection afforded by Title VIPs opposition clause extends to an employee who answers questions during an employer’s internal investigation. Id. In holding that the employee’s actions were protected, the court rejected the Sixth Circuit’s view that the opposition clause required an employee to actively instigate or initiate a complaint to be protected. Id. at 277, 129 S.Ct. 846. Although the Sixth Circuit’s interpretation of the word “opposition” “obviously exemplified” the word “as commonly understood,” the Supreme Court nevertheless determined that this court’s interpretation did not represent “the limits of [the word]” and that “nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.” Id. at 277-78, 129 S.Ct. 846.
B. Kasten’s Interpretation of the FLSA
In Kasten, 131 S.Ct. 1325 (2011), the Supreme Court considered the anti-retaliation provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., which forbids employers from retaliating “against any employee because such employee has filed any complaint ...” 29 U.S.C. § 215(a)(3). The issue in Kasten was whether the phrase “filed any complaint” includes oral as well as written complaints. 131 S.Ct. at 1329.
Kasten worked for Saint-Gobain Performance Plastics Corporation. Id. Saint-Gobain had placed employee timeclocks *344 between the area where employees put on and took off their work-related protective clothing and the area where the employees actually worked. The location of the clocks prevented workers from getting credit for the time they spent changing their clothes. Kasten claimed Saini^Gobain discharged him because he orally complained to company officials that the location of the time-clocks violated the FLSA. Id.
The district court granted summary judgment in favor of SainNGobain, concluding that the FLSA’s anti-retaliation provision did not protect oral complaints. Id. The Seventh Circuit affirmed. Id. The Supreme Court granted certiorari to resolve a circuit split on the question whether oral complaints are protected under the FLSA § 215(a)(3) and reversed, holding that “the statutory term ‘filed any complaint’ includes oral as well as written complaints.” Id. at 1329. Interpreting the phrase “filed any complaint,” the Court noted that the interpretation “depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.” Id. at 1330 (citing Dolan v. Postal Service, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006) (emphasis added)). The Court observed that while “the language of the provision, considered in isolation, may be open to competing interpretations ... considering the provision in conjunction with the purpose and context leads us to conclude that only one interpretation is permissible.” Id. at 1330-31.
The Kasten Court first considered the text of the statute, noting that “the word ‘filed’ has different relevant meaning in different contexts.” Id. at 1331. In considering other possible interpretations of the word “filed,” the Court examined dictionaries, regulations promulgated by other federal agencies, caselaw, other appearances of the word “filed” in the FLSA, and other statutes’ anti-retaliation provisions. Id. at 1331-33. In looking beyond the FLSA to other statutes containing anti-retaliation provisions, the court noted:
Those statutes, however, use somewhat different language. See, e.g., § 158(a)(4) (protecting an employee who has “filed charges or given testimony”); § 623(d) (protecting those who “opposed any [unlawful] practice” (emphasis added)); 42 U.S.C. §§ 2000e-3(a), 12203(a) (same); 29 U.S.C. § 2615(a)(2) (similar). See also, e.g., 15 U.S.C. § 2087(a)(1) (2006 ed., Supp. Ill) (“provided ... to the employer ... information relating to any violation” (emphasis added)); § 2651(a) (similar); 30 U.S.C. § 815(c)(1) (“filed or made a complaint” (emphasis added)); 42 U.S.C. § 5851(a)(1)(A) (“notified his employer” (emphasis added)); 49 U.S.C. § 42121(a)(1) (“provided ... information” (emphasis added)); § 60129(a)(1) (same).
Kasten, 131 S.Ct. at 1332-33. Given the use of broader language in other anti-retaliation statutes and the fact that the use of the word “filed” in § 215(a)(3) “lends itself linguistically to [a] broader, ‘oral’ interpretation,” the Court concluded that the use of the broader language in other anti-retaliation statutes could mean 1) that Congress wanted to limit the scope of “filed” in § 215(a)(3) of the FLSA to writings, or 2) that Congress did not believe a different use of “filed” in anti-retaliation provisions outside of the FLSA made a significant interpretive difference. Id. The Court noted that “[t]he bottom line is that the text, taken alone, cannot provide a conclusive answer to our interpretive question.” Id.
The Kasten Court looked further into “functional considerations” and decided *345 that limiting § 215(a)(3) to written complaints would undermine the basic objectives of the FLSA. Kasten, 131 S.Ct. at 1333. Limiting the scope of § 215(a)(3) to the filing of written complaints would “prevent Government agencies from using hotlines, interviews, and other oral methods of receiving complaints.” Id. at 1334. Such a limitation would also “discourage the use of desirable informal workplace grievance procedures to secure compliance with the Act.” Id.
The need for effective enforcement of the FLSA led the Court to compare it to the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(4). Kasten, 131 S.Ct. at 1334. The Court noted that it had “broadly interpreted the language of the NLRA’s anti-retaliation provision” because of the need for effective enforcement of the NLRA.[1] Id. The similar enforcement needs of the NLRA and FLSA require an interpretation that provides “broad rather than narrow protection to the employee.” Id. (citing NLRB v. Scrivener, 405 U.S. 117, 122, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972)).[2] Based on these functional considerations, the Court determined that oral complaints are within the scope of FLSA 215(a)(3) so long as the complaint is “sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.” Id. at 1335. The Court further observed that “[gjiven Congress’ delegation of enforcement powers to federal administrative agencies, we also give a degree of weight to their views about the meaning of this enforcement language.” Id.
II. Sixth-Circuit Interpretation of Anti-Retaliation Provisions
Sixth Circuit precedent analyzing anti-retaliation provisions has not taken as restrictive a view as the majority does here. In EEOC v. Ohio Edison Co., 7 F.3d 541, 545 (6th Cir.1993), this court broadly construed the opposition provision of Title VII. See 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against any employee or applicant for employment “because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.”) (emphasis added). This court read the phrase “he has opposed any practice” to mean “he or his representative has opposed any practice.” Id. A broad reading of the provision was necessary, this court stated, because it was consistent with the purpose of the Act, which was to prohibit retaliation against protected activity. Id. This court also noted that other courts have “routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress’s clear purpose in proscribing retaliatory activity.” Id.
*346 This court has also liberally interpreted anti-retaliation provisions in other statutes similar to ERISA. In EEOC v. Romeo Community Schools, 976 F.2d 985, 989-90 (6th Cir.1992), this court held that the FLSA’s anti-retaliation provision, the precise provision at issue in Hasten, can be triggered by unsolicited internal complaints. See 29 U.S.C. § 215(a)(3) (prohibiting employers from retaliating “against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act.”). The plaintiff, a female teacher, informally complained to the school district that she believed it was “breaking some sort of law” by providing higher wages to her male counterparts. 976 F.2d at 990. This court held the employee’s informal complaint was protected under the Act, rejecting the defendant’s argument that the FLSA § 215(a)(3) protects employee complaints only where the employer’s retaliatory action takes place after the employee files an official complaint. Romeo Cmty. Schools, 976 F.2d at 990; see also Dunlop v. Carriage Carpet Co., 548 F.2d 139, 142, 147 (6th Cir.1977) (broadly interpreting the FLSA § 203(e) to include former employees, despite the FLSA amendment by Congress of the phrase “employee includes ” to “employee means ”); NLRB v. Retail Store Emps. Union, 570 F.2d 586, 590 (6th Cir.1978) (broadly interpreting NLRB § 8(a)(4), which states that it is an unfair labor practice for an employer “to discharge or otherwise discriminate against an employee because he has filed charges or given testimony,” to protect employees who refuse to participate in an NLRB investigation). As the Secretary of Labor’s amicus brief points out, Sixth Circuit precedent favors interpretations that grant broad protections to employees.
III. The Circuit Split: Circuits That Protect “Unsolicited Internal Complaints” A. Post-Kasten Interpretation of § 510
In George v. Junior Achievement of Central Indiana, Inc., 694 F.3d 812, 815 (7th Cir.2012), the Seventh Circuit explicitly held that § 510 protects an employee’s unsolicited internal complaint. The plaintiff in George noticed that his employer had failed to deposit money withheld from his paycheck into his retirement account. Id. at 813. George protested about this ERISA violation to various high-level executives of the company. Id. Eventually, he received checks that made up the missed deposits plus interest, but he was discharged within several months. Id. Like the Fifth and Ninth Circuits, the Seventh Circuit held that George’s unsolicited internal complaints were protected “inquiries.”
Two other circuits have held that § 510 applies to unsolicited informal complaints. Anderson v. Electronic Data Systems Corp., 11 F.3d 1311, 1313, 1315 (5th Cir.1994); Hashimoto v. Bank of Hawaii, 999 F.2d 408, 411 (9th Cir.1993). The ninth circuit stated that reporting misconduct is a necessary step in the commencement of any formal inquiry and that, unless informal beginnings are covered, employers would be induced to dismiss employees as soon as they complained or asked a barbed question.
The statute does not specify who asks the question or, more generally, initiates the inquiry. There is no linguistic reason why “inquiry” cannot refer to the employee’s questions as well as the employer’s. Most questions (or observations) will lead to questions in return; after George complained, managers at Junior Achievement asked questions of *347 him. Treating § 510 as covering only-half of the dialogue would not make sense.
Id. at 814, 815. The George court rejected the Third Circuit’s contention that § 510’s language is unambiguous:
Both the initial clauses in § 510 and the prepositional phrase that modifies them employ the disjunctive, which implies that informal and formal approaches are separate tracks, both of which are covered. Section 510 can be parsed this way:
((has given information) or (has testified or is about to testify))
in (any ((inquiry) or (proceeding))).
Likewise we can group the actions and settings based on formality:
((has given information) in (any inquiry))
or ((has testified or is about to testify) in (any proceeding)).
This understanding about which words go with which other words is not compelled by rules of grammar—the language is ambiguous—but clues including the similar ordering of the informal and formal options lend support to splitting the provision into two parallel tracks.
Because § 510 refers to inquiries without specifying who is doing the inquiring, it logically covers employees’ inquiries. Crawford provides some support for this understanding ... Junior Achievement proposes to add modifiers such as “formal” or “solicited” to the word “inquiry” in § 510. Just as in Crawford, we must enforce the text as enacted, without the additions. See also Kasten, 131 S.Ct. at 1330. The grammatical structure and functions of § 510 do not support reading the statute as if it read: “for giving information ... in response to any inquiry” (adding the italicized words to the enacted text). Crawford admonishes us to resist the urge to read words into statutes.
George, 694 F.3d at 814-16 (rejecting Edwards v. A.H. Cornell & Son, Inc., 610 F.3d 217, 224 (3rd Cir.2010) (emphasis in original)). George followed Kasten in deciding that “[w]hen dealing with ambiguous anti-retaliation provisions,” a court must “resolve the ambiguity in favor of protecting employees.” 694 F.3d at 814 (citing Kasten, 131 S.Ct. at 1333-35).
B. Pre-Kasten Interpretation of § 510
Before the Supreme Court decided Kas-ten, the Ninth Circuit considered a case involving an employee’s unsolicited internal complaint in Hashimoto v. Bank of Hawaii, 999 F.2d 408 (9th Cir.1993). Hashimoto was instructed by her co-workers to commit various ERISA violations. Id. at 409. After Hashimoto complained to other employees about “potential and/or actual violations by the Bank of the reporting and disclosure requirements and fiduciary standards of ERISA,” she was discharged. Id. Although the controlling issue was whether Hashimoto’s state claims were preempted, the Ninth Circuit noted that § 510 was “clearly meant to protect whistle blowers” in Hashimoto’s position. Id. at 411. The court stated that the “normal first step in giving information or testifying” was “to present the problem first to the responsible managers of the ERISA plan.” Id. If an employee “is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown.” Id.
The Fifth Circuit interpreted § 510 as protecting unsolicited internal complaints in Anderson v. Electronic Data Systems *348 Corp., 11 F.3d 1311 (5th Cir.1994). Anderson was asked by a specific employee to commit various ERISA violations. Id. at 1312. After Anderson refused and reported the alleged ERISA violations to management, he was demoted and discharged. Id. Similar to the Ninth Circuit in Hashimoto, the Fifth Circuit in Anderson focused on the ERISA preemption issue, but noted that § 510 protects employees, like Anderson, who “provid[e] information or testimony relating to ERISA.” Id. at 1315.
IV. Circuits That Do Not Protect Unsolicited Internal Complaints
Every circuit court case that interprets § 510 protection as not protecting an employee’s unsolicited internal complaint was decided pre-Kasten. But After Kasten, the Fourth Circuit in a FLSA retaliation case followed the Supreme Court’s guidance on statutory interpretation.
A. Pre-Kasten Interpretation of § 510
The Fourth Circuit in King v. Marriott Int’l, Inc., 337 F.3d 421 (4th Cir.2003), held that unsolicited internal complaints are not protected under § 510. King had learned of potential ERISA violations and reported them to her immediate supervisor. Instead of remedying the violations, the supervisor promoted King and gave her increased responsibilities regarding benefit plan finances. When the supervisor revived his potentially violative plan, King objected again and shared her objections with two in-house attorneys in addition to her supervisor. Id. When the supervisor revived his plan a third time, King objected again, orally and in writing, and was fired, purportedly for feuding with other employees. Id. The Fourth Circuit concluded that King’s complaints were not protected under § 510:
In interpreting a very similar provision of the Fair Labor Standards Act ... [3] we concluded that the term “proceeding” referred only to administrative or legal proceedings, and not to the making of an intra-company complaint. See Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 364 (4th Cir.2000). In Ball, we said that “the ‘proceeding’ necessary for liability ... refers to procedures conducted in judicial or administrative tribunals,” noting that “proceeding,” in the Act, was “modified by attributes of administrative or court proceedings.” In particular, we explained, “testify” and “institute” both connote “a formality that does not attend an employee’s oral complaint to his supervisor.”
King, 337 F.3d at 427. The King court determined that § 510 of ERISA, like the FLSA provision interpreted in Ball, was “much narrower” than other anti-retaliation provisions, such as found in Title VII, and required a stricter interpretation. King, 337 F.3d at 427 (citing Ball, 228 F.3d at 364, and Ball’s reference to Title VII's anti-retaliations provision, 42 U.S.C. § 2000e~3(a) (making it unlawful for an employer to discriminate against an employee because he has opposed any practice made unlawful by the Act.)) The court interpreted § 510 protections to be limited to the legal or administrative proceedings, “or at least to something more formal than written or oral complaints made to a supervisor.” Id. at 427.
In Edwards v. A.H. Cornell & Son, Inc., the Third Circuit followed King and held that § 510 of ERISA does not protect an *349 employee’s unsolicited internal complaint. 610 F.3d 217 (3rd Cir.2010). Edwards discovered ERISA violations, “objected to and/or complained” about them to her company’s “management,” and was later fired. Id. at 219. In holding that Edwards’ complaints were not protected, the Third Circuit determined that § 510 only protects employer-initiated inquiries. Id. at 223. The Third Circuit held § 510 “plain and unambiguous,” and not “reasonably susceptible of different interpretations.” Id. at 222 (internal citations omitted). The Edwards court interpreted § 510 as granting protection only where there is an employer-initiated request for information. Id. at 223.
The Second Circuit also denied § 510 protection to unsolicited internal complaints in Nicolaou v. Horizon Media, Inc., 402 F.3d 325 (2d Cir.2005). Nicolaou discovered a “serious payroll discrepancy” that she believed put her company in violation of ERISA. Id. at 326. She brought the discrepancy to the attention of the Chief Financial Officer and Controller, and eventually felt compelled to inform “outside counsel” for the company, who conducted his own investigation and agreed with Nicolaou. Id. Nicolaou and the attorney then met with the President of the company, who reassigned Nicolaou, after which her employment was terminated. Because the district court record did not reflect whether the President of the company arranged the meeting, the Second Circuit remanded to the district court to decide whether Nicolaou could “demonstrate that she was contacted to meet with [the President] in order to give information about the alleged underfunding of the Plan.” Id. at 330 (emphasis added). The Court decided that the “informal gathering of information falls within the plain meaning of ‘inquiry,’ ” and was protected by § 510. Id. at 329. Thus, if Nicolaou could demonstrate that she was contacted by her employer “to give information about the alleged underfunding of the Plan, her actions would fall within the protection of Section 510.” Id. at 330. The Court limited § 510 protection to employees who give information in employer-initiated inquiries. The Nicolaou court did not consider Nico-laou’s actions before her meeting with the President as relevant under § 510.
The Second Circuit based its conclusions on the “plain language” of § 510. Nicolaou, 402 F.3d at 328. The court refused to recognize any similarities to the FLSA, 29 U.S.C. § 215(a)(3),[4] as ERISA § 510 was “unambiguously broader in scope.” Nicolaou, 402 F.3d at 328. The Nicolaou court noted that its holding did not conflict with the Fourth Circuit’s King decision. Id. at 421. The court recognized King’s interpretation that “Section 510’s use of the phrase ‘inquiry or proceeding’ ” reached only “the legal or administrative, or at least ... something more formal than written or oral complaints made to a supervisor.” Nicolaou, 402 F.3d at 330 (citing King, 337 F.3d at 427). The Nico-laou court, however, stated “the proper focus is not on the formality or informality of the circumstances under which an individual gives information, but rather on whether the circumstances can fairly be deemed to constitute an ‘inquiry,’ ” and focused on whether the employer initiated the inquiry. Id.
B. Fost-Kasten Statutory Interpretation in the Fourth Circuit
No circuit court interpreting § 510 of ERISA as failing to protect an employee’s unsolicited internal complaints has re *350 turned to the question post-Kasten. In Minor v. Bostwick Laboratories, Inc., 669 F.3d 428 (4th Cir.2012), however, the Fourth Circuit (post-Kasten) broadly interpreted § 215(a)(3) of the FLSA to protect an employee’s unsolicited internal complaint.
The issue in Minor was whether an employee’s internal complaint could trigger the protection of § 215(a)(3). Minor, 669 F.3d at 431. Minor argued that Kas-ten requires a holding that protects “intra-company complaints” under § 215(a)(3). Id. Her employer argued that Ball, 228 F.3d 360 (4th Cir.2000), was controlling, rather than Kasten, and that Ball “compelled] the conclusion that intracompany complaints are unprotected.” Minor, 669 F.3d at 431. In the alternative, both parties argued that the plain language of § 215(a)(3) supported their respective positions. Id.
The Fourth Circuit held that “although the language of § 215(a)(3) is ambiguous, the remedial purpose of the statute requires that it protect from retaliation employees who file intracompany complaints.” Id. at 432. It explained that Kasten’s reasoning was “persuasive” but not “directly controlling,” as the Supreme Court had “expressly declined to address the question of whether an intracompany complaint could qualify as protected activity under the FLSA.” Id. (citing Kasten, 131 S.Ct. at 1336). The Fourth Circuit distinguished Kasten from Ball by breaking down the FLSA’s anti-retaliation provision into three clauses, interpreting the phrase “filing any complaint” in § 215(a)(3) as the “complaint clause.” Minor, 669 F.3d at 433. The court stated that § 215(a)(3) protects three distinct types of activities; (1) filing any complaint, (2) instituting or causing to be instituted any proceeding, and (3) testifying or being about to testify in any such proceeding. Id. at 433. The Minor court stated it had “specifically noted in Ball that our opinion did not purport to construe the ‘complaint clause.’” Id. (citing Ball, 228 F.3d at n. *).
Determining that neither Kasten nor Ball were “directly controlling,” the Fourth Circuit turned “to an independent review of the language of § 215(a)(3).” Minor, 669 F.3d at 434. The court noted that, unlike the district court, it now had “the benefit of the Supreme Court’s recent consideration of the plain meaning of ‘filed any complaint’ from Kasten.” Id. at 435. Using Kasten as a guide, the court concluded “that the language ‘filed any complaint’ is ambiguous with regard to whether intracompany complaints are protected activity under § 215(a)(3).” Id. The court declined to overrule its statement in Ball that the term “proceeding” in § 215(a)(3) referred only to administrative or legal proceedings and not to the making of an intra-company complaint, on the ground that Ball did not involve the complaint clause of § 215(a)(3) and that it was Congress’ intent to consider each category of protected activity separately. Id. at 436.
Because the term “filed any complaint” in § 215(a)(3) is ambiguous, the Fourth Circuit turned to the “functional considerations” considered in Kasten, 131 S.Ct. at 1333, and found that those considerations “dictate that intracompany complaints qualify as protected activity within the meaning of the FLSA’s anti-retaliation provision.” Id. at 437. The Minor court considered the FLSA’s basic goals, including that it was enacted to combat labor conditions detrimental to the well-being of workers, that Congress had included the anti-retaliation provision so that employees would not have to fear economic retaliation for reporting violations, and that limiting the provision’s coverage to complaints made only to an administrative or adjudi *351 cative body would undermine the purpose of the FLSA. Id. An interpretation of § 215(3)(a) that protected intracompany complaints, “on the other hand, comports with the statute’s objectives as described by Congress’s findings and the Supreme Court’s interpretation of those findings.” Id. at 437.
V. Analysis
The threshold question is whether § 510 is reasonably susceptible of different interpretations. Kasten, 131 S.Ct. at 1330-31 (observing that an anti-retaliation provision is ambiguous if “the language of the provision, considered in isolation, may be open to competing interpretations.”); see also Edwards, 610 F.3d at 222. If § 510 is ambiguous regarding whether it protects unsolicited internal complaints, Kasten counsels that its interpretation “depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.” Kasten, 131 S.Ct. 1325, 1330 (citing Dolan, 546 U.S. at 486, 126 S.Ct. 1252).
The circuit split and divergent opinions regarding whether § 510 protects an employee’s unsolicited internal complaints suggest an ambiguity. See Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 739, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (in light of different interpretations in state supreme courts and federal circuit courts, the court found it difficult “to contend that the word ‘interest’ in the National Bank Act is unambiguous ... ”); North Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm’n, 691 F.3d 735, 740 (6th Cir.2012) (the fact that the phrase “pending final order on the complaint” of 30 U.S.C. § 815(c)(3) “does not have a plain meaning” and “is subject to more than one reasonable interpretation” was demonstrated by the competing interpretations offered by the parties, and noting that “the existence of divergent court opinions also suggests ambiguity.”).
Kasten has important implications for interpreting § 510. In both King and Edwards, which relies on King’s reasoning, § 510 protection was limited to employees who give information in “something more formal than written or oral complaints made to a supervisor.” King, 337 F.3d at 427; Edwards, 610 F.3d at 223 (“even beyond the plain meaning of ‘inquiry’ and ‘proceeding,’ the phrase ‘testified or is about to testify’ implies that the phrase ‘inquiry or proceeding’ is limited to more formal actions.”) Relying on another pre-Kasten case, Ball,[5] the King court determined that § 510 of ERISA, like the anti-retaliation provision of the FLSA interpreted in Ball, was “much narrower” than other anti-retaliations provisions, requiring a stricter interpretation of § 510. Id. King interpreted § 215(a)(3) of the FLSA—the same whistleblower provision the Supreme Court interpreted a decade later in Kasten. But Kasten interpreted the provision to protect employees who make informal oral or written complaints. 131 S.Ct. at 1335.
The Second Circuit in Nicolaou focused less on the formality of the inquiry and more on the importance of the inquiry being “employer-initiated.” 402 F.3d at 330. In fact, the Nicolaou court observed that ERISA’s § 510 is “unambiguosly broader in scope” than the FLSA’s § 215(a)(3). Id. at 328. However, none of these statements take away from the fact that the court did not believe its holding conflicted with King’s reasoning, or that it based its conclusions on the “plain lan *352 guage” of § 510. Id. In fact, Nicolaou’s holding calls for a broader interpretation of § 510 than King and Edwards, with its statement that the “plain language of ERISA Section 510” is “unambiguously broader in scope” than the FLSA’s § 215(a)(3). Id. at 328. Following the court’s own reasoning, if Nicoloau had been decided post -Kasten the Second Circuit would interpret § 510 of ERISA to protect an employee’s unsolicited internal complaint, since Kasten interpreted § 215(a)(3) of the FLSA to afford broad protections for employees.
After the Supreme Court decided Kas-ten, the Fourth Circuit held that § 215(a)(3) of the FLSA protects an employee’s unsolicited internal complaints in Minor, 669 F.3d. at 439. The Fourth Circuit noted that it had adopted the majority view, which included the Sixth Circuit, on the same issue. Id. at 438 (citing Romeo Cmty. Schools, 976 F.2d at 989). However, after Kasten the Fourth Circuit’s Minor and King decisions cannot be reconciled. Compare King, 337 F.3d at 427 (relying on Ball in its determination that § 510 of ERISA and § 215(a)(3) of the FLSA require .a strict, narrow interpretation), with Minor, 669 F.3d at 435-37 (distinguishing Ball from Kasten and using Kasten as a guide in determining that § 215(a)(3) of the FLSA was ambiguous and that functional considerations dictated “that intracompany complaints qualify as protected activity.”). Minor is noteworthy because the only two other circuits to interpret ERISA’s § 510 as not protecting an employee’s unsolicited internal complaint relied on the Fourth Circuit’s reasoning in King.
VI.
The district court decided this case primarily on the basis that Sexton’s email was not an inquiry. The majority makes this point as well. Initially, Sexton inquired of the Human Resources manager as to the results of the election. After confirming that the employees had received the most votes, he sent the email to the board chairman. The majority concedes that Sexton gave information in the email, but concludes that it was not given in an inquiry. I agree with the Secretary that a complaint may, in context, be an inquiry, and that Sexton was clearly asserting that Panel Processing had violated ERISA and inquiring whether the board would take action or Sexton would be required to do so. Sexton argues that Panel Processing responded to that inquiry by firing him.
VII.
Section 510 is susceptible of several interpretations, only one of which is that employee information must be given 1) at the employer’s initial request and/or 2) in “something more formal than written or oral complaints,” in order to be protected. See, e.g., King, 337 F.3d at 427. I would follow George, the only circuit court decision issued after Kasten. 694 F.3d at 814 (“When dealing with ambiguous anti-retaliation provisions, we are supposed to resolve the ambiguity in favor of protecting employees.” (citing Kasten, 131 S.Ct. at 1333-35)); see also Crawford, 555 U.S. at 277-78, 129 S.Ct. 846 (“nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.”)

. The Court "broadly interpreted the language of the NLRA’s anti-retaliation provision—'filed charges or given testimony,’ 29 U.S.C. § 158(a)(4)C—as protecting workers who neither filed charges nor were 'called formally to testify’ but simply participate^] in a National Labor Relations Board investigation.' ” Kasten, 131 S.Ct. at 1334 (emphasis added by the Court).

. In addition, the Scrivener Court declined to read strictly the NLRA’s reference to an employee who "has filed charges or given testimony,” or confine "in its reach to formal charges and formal testimony.” Scrivener, 405 U.S. at 122, 92 S.Ct. 798.

. The provision forbids employers from retaliating “against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act.” 29 U.S.C. § 215(a)(3).

. That is the same provision of the FLSA the Court later interpreted in Kasten.

. Ball, 228 F.3d 360, 364 (4th Cir.2000).